ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| RENATUS, LLC.<br><br>Parte Peticionaria<br><br><br>v.<br><br><br><br>MUNICIPIO DE PATILLAS<br><br>Parte Recurrida | KLCE202500474 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Patillas<br><br>Caso Núm.: PA2020CV00154<br><br>Sala: 302<br><br>Sobre: Incumplimiento de Contrato, Cobro de Dinero, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Salgado Schwarz, el Juez Monge Gómez y la Juez Lotti Rodríguez[1].

Monge Gómez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de mayo de 2025.

Compareció ante este Tribunal la parte peticionaria, Renatus, LLC (en adelante, "Renatus" o "Peticionario"), mediante recurso de *certiorari* presentado el 1 de mayo de 2025. Nos solicitó la revocación de la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Patillas, el 21 de febrero de 2025. Dicho dictamen fue objeto de una "**Moción en Solicitud de Reconsideración**" interpuesta por el Peticionario, la cual fue declarada "No Ha Lugar" el 1 de abril de 2025.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del auto de *certiorari* ante nuestra consideración.

**I.**

El caso de epígrafe tuvo su origen el 14 de diciembre de 2020, con la presentación de una "**Demanda**" por parte de Renatus en contra del Municipio de Patillas (en adelante, el "Recurrido") sobre incumplimiento de contrato, cobro de dinero y daños y perjuicios contractuales. Mediante la misma, expresó que el 1 de agosto de 2018 suscribió con el Recurrido cierto

---

[1] De conformidad con la OATA-2025-068 y debido a que el Hon. Félix R. Figueroa Cabán ya no ejerce funciones como juez de apelaciones, se designó a la Hon. Glorianne Lotti Rodríguez para entender y votar en el caso de epígrafe.

contrato intitulado "**Professional and Consultive Services Agreement**" mediante el cual acordaron que Renatus asesoraría al mencionado ayuntamiento, respecto a todas las ayudas federales disponibles, como resultado de los daños ocasionados por el paso de los huracanes Irma y María. Afirmó que el término de duración pactado fue de unos tres (3) años, con opción de renovación por dos (2) años adicionales, mientras que la compensación acordada por los servicios a rendirse no excedería la suma de $150,000.00. Manifestó que, al alcanzar el máximo de facturación pactado, el 20 de octubre de 2018 ambas partes acordaron enmendar el referido contrato a los fines de aumentar la compensación acordada a la suma de $250,000.00.

Asimismo, mencionó que el 22 de enero de 2019 otorgaron un segundo contrato a través del cual se aumentó el límite máximo de la compensación pactada a la suma de $1,715,000.00. Expuso que, al momento de la presentación del pleito le había facturado al Municipio de Patillas la cantidad de $765, 281.68 por los servicios rendidos bajo ambos contratos, suma que alegó que el Recurrido no había satisfecho y que era líquida y exigible. Adujo que en numerosas ocasiones le había exigido al Municipio el pago de la antedicha deuda, pero que éste hizo caso omiso a dichas reclamaciones extrajudiciales. Indicó que el 9 de noviembre de 2020 le cursó al ayuntamiento una notificación formal de incumplimiento de contrato, de conformidad con la Cláusula 16.1.2 del acuerdo suscrito entre las partes. Por último, argumentó que, debido a lo mencionado anteriormente, había sufrido daños y perjuicios ascendentes a la suma de $250,000.00. En sintonía con ello, le solicitó al TPI que declarara "Ha Lugar" la "**Demanda**" y condenara al Municipio de Patillas al pago de la suma reclamada, más intereses al tipo legal, costas y una suma razonable por concepto de honorarios de abogado.

Posteriormente, el 10 de julio de 2021, el Municipio de Patillas presentó su "**Contestación a Demanda**" mediante la cual negó la mayoría de las alegaciones formuladas en su contra y alegó afirmativamente que Renatus suscribió el contrato en controversia, a sabiendas de que no

contaba con la aprobación de los fondos federales para el pago de la obligación. Asimismo, alegó que el Peticionario no brindó los servicios que pretendía cobrar. Además, afirmó que el contrato suscrito entre las partes era nulo.

Junto a su "**Contestación a Demanda**", el Municipio de Patillas presentó una "**Reconvención**" en la que expresó que el contrato objeto de la presente controversia no fue remitido a la Oficina del Contralor de Puerto Rico, de conformidad con la Ley Núm. 18 de 30 de octubre de 1975, según enmendada, mejor conocida como "Ley de Registros de Contratos", 2 LPRA secs. 97 *et al.*, y el Reglamento Núm. 33 de 15 de septiembre de 2009, conocido como "Registro de Contratos, Escrituras y Documentos Relacionados, y Envío de Copias a la Oficina del Contralor del Estado Libre Asociado de Puerto Rico", por lo que sostuvo que el mismo era inexistente. De igual manera, afirmó que el otorgamiento de un contrato sin contar con el presupuesto para el mismo constituye una actuación nula y *ultra vires*. En vista de lo anterior, le peticionó al foro recurrido que declarara "Ha Lugar" la "**Reconvención**", decretando así la nulidad de los contratos en cuestión y ordenara la devolución de los fondos públicos invertidos en ambos.

Más adelante, Renatus presentó una "**Réplica a Reconvención**" a través de la cual negó la mayoría de las alegaciones expuestas en su contra y aclaró que los contratos suscritos entre las partes eran por servicios profesionales y no de arrendamiento. De igual forma, expresó que, para cerciorarse que el Municipio de Patillas, en efecto, tenía capacidad para el pago de los servicios que se habrían de brindar, Renatus le solicitó al Recurrido copia de los estados financieros auditados más recientes. Señaló que dichos estados demostraron que, para el 30 de junio de 2017, el Municipio contaba con $2,258,680.00 en efectivo, en caja o valores equivalentes y un total de $5,225,114.00 en activos. Indicó que, además de ello, el Recurrido le confirmó que, desde la última auditoría realizada, no habían ocurrido cambios en las condiciones financieras que alteraran su capacidad de pago.

Asimismo, mencionó que verificó la calificación del Municipio en el sistema de calificación financiera municipal de ABRE Puerto Rico y el mismo reflejó que la calificación de dicho ayuntamiento había aumentado de una calificación de F a D y que sus activos habían incrementado a la cantidad de $9,509,273.00. En consonancia con lo anterior, le solicitó al TPI que declarara "Ha Lugar" la "**Demanda**" y desestimara la "**Reconvención**".

Así las cosas, el 2 de diciembre de 2024, Renatus presentó una "**Moción en Solicitud de Sentencia Sumaria Parcial**", en la que peticionó que se dictara sentencia sumaria parcial a su favor y se le ordenara al Municipio de Patillas el pago de la cantidad de $765,281.68, más los intereses legales aplicables. En síntesis, sostuvo que no existía controversia respecto a que las facturas que envió fueron aprobadas por el Recurrido, por lo que éste tenía la obligación de pagar las mismas en el término de treinta (30) días desde su aprobación. Igualmente, aseveró que los contratos pactados entre las partes son válidos y que el Municipio de Patillas debía cumplir con los mismos.

Por su parte, el 24 de enero de 2025, el ayuntamiento presentó su "**Escrito en Oposición a Petición que, sobre Sentencia Sumaria presentada por la Parte Demandante, Incumplimiento Procesal, Solicitud de Sumaria y otros Extremos**" (en adelante, "Oposición") en la que sostuvo que el foro de instancia estaba impedido de dictar sentencia sumaria, toda vez que la validez de los contratos suscritos entre las partes estaba en controversia. Adicionalmente, expresó que se incumplió con las disposiciones legales aplicables para la adquisición de servicios mediante el mecanismo de subastas.

Finalmente, el 21 de febrero de 2025, el TPI emitió una *Resolución* mediante la cual declaró "No Ha Lugar" la "**Moción en Solicitud de Sentencia Sumaria Parcial**", por entender que existía controversia sobre los siguientes hechos medulares del caso: (1) fecha en que se otorgó el Contrato núm. 2019-000030, (2) si la firma del Alcalde constituía un acuse de recibo o una validación de las facturas sometidas por Renatus, (3) si al momento de otorgar los contratos, el Municipio de Patillas contaba con el

presupuesto para los mismos, (4) si se llevó a cabo el procedimiento de subastas para la adquisición de servicios correctamente, (5) si existen órdenes de compra, (6) la existencia de los "task orders" y si fueron expedidos por el Municipio de Patillas y por último, (7) si las entidades Renatus, LLC y Renatus Advisors son la misma parte o son dos entes diferentes. Insatisfecho con esta decisión, Renatus presentó una "**Moción en Solicitud de Reconsideración**", la cual fue declarada "No Ha Lugar" el 1 de abril de 2025.

Aun inconforme con lo anterior, el Peticionario presentó el recurso que nos ocupa, mediante el cual le imputó al TPI la comisión de los siguientes errores:

> **a. ERR[Ó] EL TPI AL NO CONCEDER LA SUMARIA A PESAR DE QUE NO EXISTE CONTROVERSIA RELACIONADA A HECHOS MATERIALES.**
>
> **b. ERR[Ó] EL TPI AL NO TOMAR DETERMINACIONES DE HECHOS DE LOS CUALES CLARAMENTE NO EXISTE CONTROVERSIA.**

**II.**

**A.**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021). La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. Rivera *et al.* v. Arcos Dorados *et al.*, 212 DPR 194, 207 (2023). Así, este solo se expedirá luego de justipreciar los criterios establecidos en la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, R. 40, y en aquellas instancias específicas que delimita la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de desempeñar prudentemente nuestra facultad discrecional, es imprescindible acudir a lo que establece la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). La norma antes citada adquiere mayor importancia en aquellas situaciones donde los medios alternativos de revisión de determinaciones no están disponibles. Íd. Por ello, la referida Regla indica que los criterios que se deben evaluar son los siguientes:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

A diferencia del recurso de apelación, el auto de *certiorari*, por ser este uno discrecional, debe emplearse con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). Con relación a esto, el Tribunal Supremo de Puerto Rico ha señalado en numerosas ocasiones que, en definición, el concepto de *discreción* significa tener poder para decidir en una u otra forma. Es decir, escoger entre uno o varios cursos de

acción. García v. Padró, 165 DPR 324, 334 (2005). El concepto de *discreción* también ha sido definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v. Gómez Alayon, *supra*, pág. 13. Dicho de otro modo, el ejercicio apropiado de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). De esta manera, un foro apelativo no se interpondrá en las decisiones del foro sentenciador, a menos que dichas decisiones sean arbitrarias o en abuso de su discreción. SLG Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria.  A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no

prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. **Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia admisible que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación**. Oriental Bank v. Caballero García, *supra*, pág. 678; Ramos Pérez v. Univisión de P.R., 178 DPR 200, 221 (2010).

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi *et al*., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 8; Roldán Flores v. M. Cuebas *et al.*, 199 DPR 664, 677 (2018).

Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o

reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En <u>Meléndez González *et al.* v. M. Cuebas</u>, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. <u>Íd</u>., págs. 118-119.

### C.[2]

Es pilar fundamental de nuestro acervo contractual puertorriqueño el principio de la libertad de contratación. <u>Arthur Young & Co. v. Vega III</u>, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, <u>Fundamentos de Derecho Civil: Doctrina General del Contrato</u>, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las

---

[2] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1812 del Código Civil de 2020 dispone que: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado y su jurisprudencia interpretativa.

consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil de 1930, 31 LPRA sec. 3375. Es por ello que existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. Art. 1206 del Código Civil de 1930, 31 LPRA sec. 3371.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930, 31 LPRA sec. 3391; Díaz Ayala *et al.* v. E.L.A., 153 DPR 675, 690-691 (2001). Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". Art. 1230 del Código Civil de 1930, 31 LPRA sec. 3451.

Ahora bien, cuando el contrato es válido, pero uno de los contratantes que se obligó recíprocamente incumple con su parte del pacto, el perjudicado podrá reclamar el cumplimiento del contrato o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Art. 1077 del Código Civil de 1930, 31 LPRA sec. 3052. El incumplimiento de una obligación recíproca conlleva un efecto resolutorio siempre que la obligación incumplida sea una esencial o que su cumplimento constituya el motivo del contrato para la otra parte. NECA Mortg. Corp. v. A&W Dev. S.E., 137 DPR 860, 875 (1995).

> La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, *supra*, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. Íd., págs. 875-876 (cita omitida).

**III.**

En el presente caso, el Peticionario nos solicitó la revocación de la *Resolución* del TPI en la que se declaró "No Ha Lugar" la "**Moción en Solicitud de Sentencia Sumaria Parcial"** interpuesta por Renatus.

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se tratarán de forma conjunta en la discusión. En síntesis, el Peticionario argumenta que el TPI abusó de su discreción al no dictar sentencia sumaria parcial, a pesar de que no existe controversia respecto a hechos materiales del caso y al no realizar ciertas determinaciones de hechos sobre las cuales no existe disputa.

Tras la evaluación exhaustiva de los documentos que obran en el legajo apelativo, al igual que los autos electrónicos del foro recurrido, encontramos que el foro *a quo* no indició ni se desprende de los mismos que haya actuado de forma arbitraria, caprichosa, haya abusado al ejercer su discreción o cometido algún error de derecho. Tampoco el Peticionario demostró que el TPI hubiera actuado con perjuicio o cometiera un error manifiesto en su determinación.

Ello cobra vigencia en el caso de autos, cuando nuestro máximo foro judicial ha sido enfático al resolver que los hechos debidamente enumerados en una moción de sentencia sumaria sobre los cuales la parte promovente de dicho mecanismo procesal sostiene que están incontrovertidos deben hacer referencia a **prueba documental admisible en juicio**. Pérez v. Univisión de P.R., *supra*, pág. 221. Del estudio de *novo* de la *Resolución* recurrida, de la *Moción de Sentencia Sumaria,* así como su correspondiente *Oposición,* observamos que en su inmensa mayoría la prueba presentada por Renatus para solicitar la disposición sumaria del caso se limita a documentación inadmisible en juicio y a una declaración jurada emitida por su presidente y único miembro, el Sr. Eric Stephen Swider. Por consiguiente, dicha prueba no puede considerarse suficiente para demostrar que los hechos que el Peticionario alega no están en controversia, en efecto no lo están.

Sobre lo anterior, no debemos olvidar que todas las mociones de sentencia sumaria deben fundamentarse en evidencia admisible en juicio y que las declaraciones juradas ofrecidas por una parte para respaldar sus propios argumentos –práctica conocida como *self-serving*– carecen de valor probatorio por su inherente falta de objetividad. Esto es, una mera

declaración jurada de la parte interesada no es suficiente para establecer que ciertos hechos esenciales y pertinentes al caso son incuestionables. Del mismo modo, una moción de sentencia sumaria no puede apoyarse en prueba inadmisible, ya que ello contraviene los principios procesales que rigen en nuestro ordenamiento jurídico.

A la luz de lo anterior, coincidimos con el foro *a quo* en que subsisten dudas genuinas sobre hechos materiales del caso que impiden su adjudicación sumaria. Particularmente, entendemos que existe controversia en cuanto a la fecha del otorgamiento del Contrato Núm. 2019-00030, toda vez que, al consultar el Registro de Contratos de la Oficina del Contralor de Puerto Rico, observamos que dicho contrato aparece otorgado el 1 de agosto de 2018; sin embargo, al examinar el documento, notamos que presuntamente fue firmado por el presidente de Renatus el 16 de agosto de 2018, lo que plantea una discrepancia relevante. Asimismo, la evidencia presentada por el Peticionario para sustentar que el Municipio contaba con la capacidad financiera necesaria para contratar se limita a una declaración jurada sobre la Ley Núm. 2-2018, según enmendada, mejor conocida como "Código Anticorrupción para el Nuevo Puerto Rico", la cual no guarda relación directa con dicha alegación. Además, no se ofreció documentación adicional a una declaración jurada suscrita por un oficial del propio Peticionario que acreditara la existencia de órdenes de compra o *task orders* emitidas por el Municipio de Patillas. A todo lo anterior hay que sumarle que el Peticionario no aportó prueba que demostrara que Renatus LLC. y Renatus Advisors son la misma entidad, por consiguiente, también existe controversia sobre dicho hecho.

Todas y cada una de estas controversias son medulares y pertinentes para la adjudicación en los méritos del caso. No existiendo prueba documental que sustente las mismas, estamos impedidos de acoger la invitación del Peticionario y revertir la determinación recurrida.

En suma, concluimos que de los autos no se desprende indicador alguno que requiera nuestra intervención con la *Resolución* recurrida y tampoco hallamos fundamento legal alguno que amerite la expedición del

auto de *certiorari*, al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *denegamos* la expedición del auto de *certiorari* ante nos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones